AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

State and      **DISTRICT OF**      New Mexico

**FILED**

UNITED STATES OF AMERICA    UNITED STATES DISTRICT COURT
       V.          ALBUQUERQUE, NEW MEXICO

**GAVIN YEPA**
**Year of Birth: 1985**      JAN 0 3 2012

**MATTHEW J. DYKMAN**
**CLERK**

**CRIMINAL COMPLAINT**

**CASE NUMBER:**

12 mj 18

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _December 28, 2011_ in _Sandoval_ county, in the state and District of _New Mexico_ defendant(s)

an adult enrolled member of the Jemez Tribe, sexually assaulted Lynette Becenti, an adult enrolled member of the Navajo Tribe, by penetrating, and that the incident occurred within the exterior boundaries of the Jemez Pueblo.

in violation of Title _18_ United States Code, Section(s) _1153, 2242(2)(B), 2245, and 2246(2)(C)_

I further state that I am a _Special Agent, FBI_ and that this complaint is based on the following
                                             Official Title

facts: See attached Affidavit.

**Continued on the attached sheet and made a part hereof:**      [x] YES      [ ] No

Signature of Complainant

Sworn to before me and subscribed in my presence,

Benedict B. Bourgeois,
Special Agent,
Federal Bureau of Investigation

_December 30, 2011_      at      Albuquerque, New Mexico
Date                                          City and State

Karen B. Mozen
Chief U.S. Magistrate Judge
Name & Title of Judicial Officer                          Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA )
)
VS. )
)
GAVIN YEPA )
Year of Birth:  1985 )

<u>AFFIDAVIT</u>

I, the undersigned, being duly sworn, hereby depose and state as follows:

1.      I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI).  I have been employed in that capacity for over fifteen years.  I am currently assigned to the Albuquerque Division and have primary investigative responsibilities in violent and other major crimes and federal violations.  The information set forth in this affidavit has been derived from my own investigation or communicated to me by other sworn law enforcement officers or from other reliable sources.

2.      On December 29, 2011, the Federal Bureau of Investigation and Jemez Pueblo Police Department (JPD) initiated an investigation regarding the death of Lynette Becenti, year of birth (YOB) 1973.  The death was reported by Gavin Yepa, YOB 1985.  Becenti is an enrolled member of the Navajo Indian Tribe and Yepa is an enrolled member of the Jemez Indian Tribe.  The death occurred at Yepa's residence, which is located within the exterior boundaries of the Jemez Pueblo.

3.      Jemez Pueblo Tribal Officials reported that at approximately 11:50 PM, they were conducting routine patrols in the pueblo.  Near the intersection of Highway 4 and Southern Street, they were flagged down by Gavin Yepa, who told them that there was a woman in his house who was not breathing.  Yepa also told Tribal Officials that he had brought the woman from San Ysidro, NM to his house, hoping to have sex with her.  Tribal Officials noted that Yepa did not have shoes on and was very disheveled.   Yepa also appeared to be intoxicated.

4.      Yepa escorted the Tribal Officials into his house, then sat on the sofa.  The Tribal Officials observed a large amount of blood on the floor, extending from the master bedroom, across the living room, and into another bedroom, where the body of a woman was located.  The woman was nude, except for a bra which was partially removed, exposing·her breasts.  The woman also had blood smears covering her entire body.  Tribal Officials then notified JPD, who in turn notified the FBI.

5.      At approximately 3:00 AM, your affiant and members of the FBI Albuquerque Division Evidence Response Team arrived at Yepa's residence.  Yepa was located in the back seat of a JPD patrol truck and consented to a search of his residence and collection of his body standards.  Stains that appeared to be blood were apparent on Yepa's clothing and hands.

6.      Based on Yepa's consent to search, agents entered the residence and took preliminary photographs of the interior.

Agents also confirmed the presence and condition of the victim's body as described by the Tribal Officials.  Thereafter your affiant decided sought search warrants for the residence and Yepa's body standards.  At approximately 4:30 AM, Chief United States Magistrate Judge was telephonically briefed about the circumstances and issued verbal search warrants for the residence and Yepa's body.

7.        Yepa was examined and photographed at JPD offices. Numerous scratches and abrasions were noted on his arms, torso, and legs.  None of those injuries appeared to be bleeding.  Yepa also had what appeared to be blood on his hands and feet, and particularly imbedded around his finger and toe nails.  Yepa was not wearing shoes and his socks and lower pants legs were stained with what appeared to be blood.  Yepa's shirt was turned inside out and there was a tear on the right shoulder of the shirt.  Yepa's clothing, swabs from his hands and feet, a buccal swab from the mouth, and a blood sample were retained as evidence.

8.        At the Yepa's residence a significant amount of blood pooling and spatter was observed on the carpeted floor and a wall near a closet.  There were also heavy blood stains across the carpeted living room floor, leading to a hallway and another bedroom where more blood pooling and spatter was observed.  In the living room, a half liter size plastic water bottle, with what appeared to be blood on the outside and containing dirty water was located on a sofa.  A plastic 750 milliliter vodka

bottle, with what appeared to be blood on the outside was located in a trash can in the kitchen.

9.      Becenti's body was located in the second bedroom, laying in a contorted position, against a wall, near the bedroom door.  Becenti was nude except for a bra that had been partially removed.  Her hair was saturated and her body was smeared from head to toe with blood.  There were no apparent injuries or defects on Becenti's body that could explain the amount of blood throughout the house.  Additional investigation revealed that Becenti had been bleeding from the vagina and/or anus.

10.     A shovel was located next to Becenti's body. Approximately fifteen inches of the shovel handle was stained and coated with what appeared to blood, indicating that the shovel handle may have been used to penetrate Becenti's anus or vagina and cause internal injuries and bleeding.

11.     The morning of December 29, 2011, Yepa's friend Calvin Calabaza was interviewed.  Calabaza stated that the night of December 28, 2011 between 7:00 - 8:00 PM, he and his girlfriend Luana Toledo encountered Yepa in Jemez.  Yepa asked them for a ride to a store in San Ysidro, about eight miles away.  Shortly after picking up Yepa, they saw a woman walking along the road. Toledo offered the woman a ride as far as San Ysidro.  The woman was drinking a large can of a highly alcoholic drink called Four Loco and identified herself as Becenti.  Becenti was seated in the back seat with Yepa and said that she had gotten into a

1  fight with her husband earlier in the evening.  Calabaza could
2  overhear Yepa talking to Becenti.  Yepa was telling Becenti that
3  she should go home with him because he would treat her better
4  than her husband did. When they arrived at the store, Yepa
5  bought a bottle of vodka and Becenti decided to return to San
6  Ysidro.  Around 10:00 PM, Calabaza and Toledo dropped Becenti
7  and Yepa off at Yepa's house.  There was no one else at Yepa's
8  house.
9
10 12.      At about 10:20 PM on December 29, 2011, Rodney Adams
11 was interviewed by a JPD officer.  Adams said that he went to
12 Yepa's house, late the night of December 28, 2011.  Adams saw
13 Yepa inserting the handle of a shovel into Becenti's anus or
14 vagina.  Becenti was laying on the bedroom floor groaning, and
15 appeared to be heavily intoxicated and unable to resist Yepa.
16 Adams also saw Yepa insert a water bottle into Becenti's vagina.
17 Yepa then withdrew the bottle and drank from it.  The liquid in
18 the bottle appeared to be water, but looked like it had blood in
19 it.  As the assault continued, Adams rummaged through Becenti's
20 backpack and stole her cellular telephone.  Adams departed a few
21 minutes later, believing that Becenti was still alive.  Later
22 that night, Adams led JPD officers to where he had disposed of
23 the cellular phone.
24
25 13.      On December 30, 2011 an autopsy was conducted on
26 Becenti.  Preliminary findings were that Becenti died due to
27 excessive internal hemorrhaging, caused by approximately fifteen
28 inches of vaginal penetration.  The penetration extended from

1   the opening of the vagina to the diaphragm and was consistent
2   with stains and smears on the aforementioned shovel.  The
3   autopsy also confirmed trauma to the anus and rectum.

4

5   14.     Based on the information set forth in this affidavit,
6   your affiant submits that there is probable cause to believe
7   that the night of December 28, 2011, Gavin Yepa, an adult male
8   and an enrolled member of the Jemez Indian Tribe, did sexually
9   assault Lynette Becenti, an adult female and an enrolled of the
10  Navajo Indian Tribe, by penetrating her vagina and/or anus with
11  the handle of a shovel, and possibly other objects, causing
12  excessive internal hemorrhaging and organ damage, resulting in
13  Becenti's death, and that the assault occurred in the state and
14  district of New Mexico and within Indian Country, in violation
15  of Title 18, United States Code, Sections 1153, 2242(2)(B),
16  2245, and 2246(2)(C).

17

18          I swear that this information is true and correct to
19  be best of my knowledge.

20                          BENEDICT B. BOURGEOIS,
21                          Special Agent,
                            Federal Bureau of Investigation
22

23  Subscribed to and sworn to
    before me, this 30th of December 2011
24

25
    KAREN B. MOZEN,
26  CHIEF UNITED STATES MAGISTRATE JUDGE,
    Albuquerque, NM
27

28  Reviewed and approved by SAUSA Glynette Carson-McNabb